## PAXTON et al. v. PAXTON et al.
### No. 1695.

Court of Appeal of Louisiana. First Circuit.

April 10, 1937.

Leslie A. Fitch, of Baton Rouge, for appellants.

R. F. Walker, of Baton Rouge, for appellees.

DORE, Judge.

John Paxton died on September 16, 1932, leaving no ascendants nor descendants, but leaving a last will and testament in which he bequeathed most of his property to a brother, two sisters, Joe Goff, a relative by marriage, and 30 acres of land to Joe Lee, a negro woman. After the will had been probated, and after the executor had filed his final account and had been discharged, the present plaintiffs, some nineteen in number, being collateral heirs of the deceased, filed a suit against all of the legatees under the will seeking to annul the will on various grounds, both of form and of substance, and specially attacking as null and void the donation in the will to said Joe Lee for the reason that said Joe Lee, for several years prior to the death of said John Paxton and up to a short time before his death, was living with him as his concubine, which act of concubinage between said Joe Lee, a negro woman, and said John Paxton, a white man, was open and notorious.

The suit against the other legatees was compromised, and the validity of the will as to them has passed out of the case, leaving as the only controverted point in the case the legality of this donation by the deceased of thirty acres of land to this alleged concubine. Evidence was taken on this phase of the case and the trial judge dismissed plaintiffs' suit and sustained the legacy made in the will to the said Joe Lee. Plaintiffs have appealed from that part of the judgment which sustained this bequest.

The issues raised by the pleadings is whether or not said Joe Lee was living with the deceased in open concubinage. If she was, then under the plain provisions of article 1481 of the Civil Code, the donation of this immovable to her is null and void; if she was not living with him in open concubinage, the donation is valid and the judgment of the trial court should be affirmed. This article of the Code reads as follows: "Those who have lived together in open concubinage are respectively incapable of making to each other, whether inter vivos or mortis causa, any donation of immovables; and if they make a donation of movables, it can not exceed one-tenth part of the whole value of their estate. Those who afterwards marry are excepted from this rule."

In a clear and exhaustive opinion, the Supreme Court, in the Succession of Jahraus, 114 La. 456, 38 So. 417, held that the open concubinage contemplated by this article of the Code has the meaning of not secret or concealed, but plain and above board. In other words, the relationship is illicit, but the parties to it make no special effort to conceal it or keep it secret. It does not mean those liaisons between a man and a woman that are carried on with a belief on their part that their illicit relations are being kept from the public, but it has reference to that relationship or status where a man and a woman make little or no effort to conceal their illicit relations, even though they may not publicly and freely acknowledge it. Open concubinage, in its history and in its meaning, is the half-way station between lawful marriage on the one hand and secret acts of adultery or fornication on the other. The very reason for prohibiting donations between persons in this open and public illicit relationship was to discourage the evil and promote the lawful institution of marriage. In order to prevent the demoralizing effect on society arising from these open and notorious relations, the parties participating in them without the legal sanction of marriage were penalized by depriving them of the privilege of making donations to each other.

It is true that, in order to constitute this open concubinage, it is not necessary that they actually live in the same house together. Succession of Hamilton, 35 La. Ann. 640. But there must be some acts on the part of the parties to the relationship whereby their conduct is not concealed from the public by any particular design or effort at secrecy on their part. Succession of Landry, 114 La. 829, 38 So. 575.

What does the evidence show in this case? The deceased, John Paxton, was an old bachelor, owning and operating several farms. His sister lived with him on his home place, and seems to have kept house for him. Joe Lee, the negro woman had lived on his place for a number of years. Paxton had built her a house a half mile or so from where he lived. She had two children who lived with her in this house. The evidence shows that she was a share-cropper of decedent. No one testified that the deceased testator had ever been seen in this house with this negro woman nor had he or the woman ever held themselves out as living together. There is no evidence in the record even tending to show that her two children were the children of the decedent.

The principal part of the testimony relied on by plaintiffs is by witnesses, mostly relatives of the plaintiffs, who say that it was commonly and generally known in the community that Joe Lee and the deceased carried on illicit relations for years; that she was his publicly kept mistress. But none of these witnesses, with one exception, testify to any acts or statements by the parties which would show that they lived together, or carried on open and notorious relations. Surely, it does seem that if these relations were so open and notorious as to be so generally known by the community, as these witnesses would have it appear, there should be some evidence of conduct on the part of the parties to prove the correctness of these rumors. It would certainly be a dangerous precedent to permit the reputation and character of a deceased person to be besmirched by nothing more than community rumor and gossip; particularly is this true where the person whose character is attacked can no longer speak for himself.

Only one witness undertakes to testify to any improper relations between these two parties, and that in only one isolated instance. This witness testified that he came upon the deceased and Joe Lee in a compromising and suspicious position in a crib; that the deceased tried to hide, and made rather apologetic explanations to the witness about the incident. Even if we assume that there was anything improper between these parties at the time, it was an isolated case of fornication, with an effort

on their part to conceal the illicit relations from the eyes of the world.

Several witnesses, neighbors of the deceased, testified that they had never heard of the deceased keeping this woman during his lifetime; that he lived with his sister, and they frequently visited his home and saw him often; that they never saw or heard anything that would indicate that he was carrying on illicit relations with this woman. These witnesses were in as good, if not better, position to see and know more of the life of the deceased than the witnesses for plaintiffs, most of whom lived some distance from the deceased.

The trial judge correctly held that plaintiffs had failed to prove open concubinage. The donation was therefore valid. This legacy constituted only a small part of the testator's property. It is not strange, and no unfavorable inference can be drawn from this donation to this negro woman. She had helped nurse the deceased and had been on his place for a long time. Whatever may have been his feelings towards her, or his relations with her, the law has fixed the restrictions under which he is prohibited from giving her this property and as the proof does not show that the restrictions applied in this case, the courts will not interfere to set aside his expressed desire.

For these reasons, the judgment is affirmed.